610 So.2d 849 (1992)
Joseph W. SPOHRER, Jr.
v.
Stephen M. SPOHRER.
No. 91 CA 1298.
Court of Appeal of Louisiana, First Circuit.
October 16, 1992.
Rehearing Denied January 11, 1993.
*851 Chris Pierce, W.P. Wray, Jr., Baton Rouge, for plaintiff-appellee Joseph W. Spohrer, Jr.
W. Luther Wilson, Baton Rouge, for defendant-appellant Stephen M. Spohrer.
Before CARTER, LANIER and LEBLANC, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment in a suit on a contract.

FACTS
On January 17, 1984, petitioner, Joseph W. Spohrer, Jr., sold to his nephew, Stephen M. Spohrer, all of the outstanding shares of stock in Spohrer Construction Company, Inc. The recited price and consideration for the sale was $150,000.00. At the time of the sale, Stephen Spohrer paid $100,000.00. A promissory note for $50,000.00, payable to Joseph Spohrer on or before five years from the date of the sale at an interest rate of 12%, was given for the balance of the consideration.[1]
Stephen Spohrer initially paid the interest on the promissory note monthly. He subsequently made interest payments on the note in the form of additional promissory notes. However, Stephen Spohrer did not make any payments on the principal of the note.
On April 8, 1988, petitioner filed suit against defendant, Stephen Spohrer, for the balance due under the contract. In answer to petitioner's suit, defendant alleged that, under the express terms of the contract with petitioner, he was relieved of having to make payment of the $50,000.00 note because the company had been unprofitable since the date of the sale. Defendant also filed a reconventional demand for a reduction in the purchase price of the stock.[2]
After a trial on the merits, the trial court rendered judgment in favor of petitioner and against defendant on the main demand for the full sum of $50,000.00 plus interest for 12% from January 17, 1984 until paid, subject to a credit for the $3,000.00 in interest payments previously made; attorney's fees of $7,500.00, and costs of the proceeding. The trial court also dismissed defendant's reconventional demand.[3]
From this adverse judgment, defendant appeals, assigning the following errors:[4]
1. The lower court erred in refusing to follow the clear language of the contract.
2. The lower court erred in refusing to comply with the clear intention of the parties as is reflected in not only the words of the contract, but the conduct of the parties at the time of the creation of the contract.
3. The lower court erred in imposing on the situation an accounting that deviated from the standard practices utilized by both parties in preparing the statements for the company.
4. The lower court erred in its arithmetic.

INTERPRETATION OF THE CONTRACT
Legal agreements have the effect of law upon the parties, and, as they bind *852 themselves, they shall be held to a full performance of the obligations flowing therefrom. Kean v. Lemaire, 451 So.2d 151, 153-54 (La.App. 1st Cir.1984). Courts are bound to give legal effect to all contracts, according to the true intent of the parties, and the intent is to be determined by the words in the contract when they are clear and explicit and lead to no absurd consequences. LSA-C.C. arts. 2045 and 2046; Massachusetts Mutual Life Insurance Company v. Nails, 549 So.2d 826, 832 (La.1989); Foret v. Louisiana Farm Bureau Casualty Insurance Company, 582 So.2d 989, 991 (La.App. 1st Cir.1991); Ransom v. Camcraft, Inc., 580 So.2d 1073, 1077 (La.App. 4th Cir.1991); Borden, Inc. v. Gulf States Utilities Company, 543 So.2d 924, 927 (La.App. 1st Cir.), writ denied, 545 So.2d 1041 (La.1989); Schroeter v. Holden, 499 So.2d 309, 311 (La.App. 1st Cir.1986). See also Kean v. Lemaire, 451 So.2d at 154. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. Borden, Inc. v. Gulf States Utilities Company, 543 So.2d at 927. The rules of interpretation establish that when a clause in a contract is clear and unambiguous, the letter of the clause should not be disregarded under the pretext of pursuing its spirit. Cashio v. Shoriak, 481 So.2d 1013, 1015 (La.1986); Borden, Inc. v. Gulf States Utilities Company, 543 So.2d at 927.
As a general rule, parol evidence is inadmissible to vary, modify, explain, or contradict a writing. Kean v. Lemaire, 451 So.2d at 154. In Investors Associates Ltd. v. B.F. Trappey's Sons, Inc., 500 So.2d 909, 912 (La.App. 3rd Cir.), writ denied, 502 So.2d 116 (La.1987), the court noted that:
[C]ontracts, subject to interpretation from the instrument's four corners without the necessity of extrinsic evidence, are to be interpreted as a matter of law. The use of extrinsic evidence is proper only where a contract is ambiguous after an examination of the four corners of the agreement.
However, as pointed out by the court in Investors Associates, Ltd., there are exceptions which permit reference to parol and other outside evidence. When the terms of a written contract are susceptible of more than one meaning, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, or fraud is alleged, parol evidence is admissible to clarify the ambiguity, show the intention of the parties, or prove fraud. Borden, Inc. v. Gulf States Utilities Company, 543 So.2d at 927; Schroeter v. Holden, 499 So.2d at 311. Where the mutual intention of the parties has not been fairly explicit, the court may consider all pertinent facts and circumstances, including the party's own conclusions rather than adhere to a forced meaning of the terms used. Schroeter v. Holden, 499 So.2d at 311-12; Kean v. Lemaire, 451 So.2d at 154.
LSA-C.C. art. 2045 defines interpretation of a contract as "the determination of the common intent of the parties." Lindsey v. Poole, 579 So.2d 1145, 1147 (La.App. 2nd Cir.), writ denied, 588 So.2d 100 (La.1991). Such intent is to be determined in accordance with the plain, ordinary, and popular sense of the language used, and by construing the entirety of the document on a practical, reasonable, and fair basis. Lindsey v. Poole, 579 So.2d at 1147. Moreover, LSA-C.C. art. 2047 provides that "[t]he words of a contract must be given their generally prevailing meaning. Words of art and technical terms must be given their technical meaning when the contract involves a technical matter." The rule of strict construction does not authorize perversion of language or the creation of ambiguity where none exists and does not authorize courts to make a new contract where the language employed expresses the true intent of the parties. Ransom v. Camcraft, Inc., 580 So.2d at 1077. One of the best ways to determine what the parties intended in a contract is to examine the method in which the contract is performed, particularly if performance has been consistent for a period of many years. Gamble v. D.W. Jessen & Associates, 509 So.2d 1041, 1043 (La.App. 3rd *853 Cir.), writ denied, 514 So.2d 454 (La.1987). Intent is an issue of fact which is to be inferred from all of the surrounding circumstances. Borden, Inc. v. Gulf States Utilities Company, 543 So.2d at 927.
A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties. LSA-C.C. art. 2053. In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text and/or against the obligee and in favor of the obligor of a particular obligation. LSA-C.C. arts. 2056 and 2057.
In Borden, Inc. v. Gulf States Utilities Company, 543 So.2d at 928, this court set forth the appropriate standard of review as follows:
Whether a contract is ambiguous or not is a question of law. Where factual findings are pertinent to the interpretation of a contract, those factual findings are not to be disturbed unless manifest error is shown. However, when appellate review is not premised upon any factual findings made at the trial level, but is, instead, based upon an independent review and examination of the contract on its face, the manifest error rule does not apply. In such cases, appellate review of questions of law is simply whether the trial court was legally correct or legally incorrect. (citations omitted).
The threshold issue is whether the contract's terms are ambiguous or explicit. If the language of the contract provisions is determined to be explicit and unambiguous, no additional evidence can be considered. Frischhertz Electric Company, Inc. v. Housing Authority of New Orleans, 534 So.2d 1310, 1312 (La.App. 4th Cir.1988), writ denied, 536 So.2d 1236 (La.1989).
In the instant case, the contract in question specifically provided as follows:
Appearers further agree that if Spohrer Construction Company, Inc., should become unprofitable prior to the date of payment of said note, Appearer Joseph W. Spohrer, Jr. waives and relieves the maker of the note from making the payment.
The term "unprofitable" was not defined in the contract. Thus, it should be given its plain, ordinary, and popular meaning. Foret v. Louisiana Farm Bureau Casualty Insurance Company, 582 So.2d at 990; Coates v. Northlake Oil Company, Inc., 499 So.2d 252, 255 (La.App. 1st Cir.1986), writ denied, 503 So.2d 476 (La.1987).
Webster's Ninth New Collegiate Dictionary defines "unprofitable" as "not profitable." "Profitable" is defined as "affording profits" or "yielding advantageous returns or results." "Profit" is "a valuable return" or "the excess of returns over expenditures in a transaction," especially "the excess of the selling price of goods over their cost." Black's Law Dictionary, 5th edition, defines "profit" as "the gross proceeds of a business transaction less the cost of the transaction; i.e. net proceeds." Black's Law Dictionary 1090 (5th ed. 1981). However, there are different types of profit. "Gross profit" is "the difference between the sales and costs of goods sold, but excluding expenses and taxes." Black's Law Dictionary at 633. "Net profit" is "the amount arrived at by deducting from total sales the costs of goods sold and all expenses." Black's Law Dictionary at 1090. Net profit is synonymous with net income, which is income "subject to taxation after allowable deductions and exemptions have been subtracted from gross or total income." Black's Law Dictionary at 938. "Operating profit" is "the profit arrived at by deducting from sales all expenses attributable to operations but excluding expenses and income related to non-operating activities such as interest payments." Black's Law Dictionary at 1090.
Because several interpretations may be given to the term "unprofitable" as used in the contract and the parties did not specify which interpretation was to apply, we must look to the intention of the parties *854 to determine the true meaning of the term "unprofitable."
William D. Nesbit, a certified public accountant, testified that, in an accounting sense, the term "unprofitable" had many different meanings and that he was uncertain as to the meaning of the term in this context. Walter L. Simmons, Jr., another certified public accountant, testified that, in his opinion and according to the financial statements prepared under generally accepted accounting principles, Spohrer Construction Company had never been profitable during the period in question.
Joseph Spohrer testified that he agreed to the inclusion of the term "unprofitable" in the contract with the intent that if the economy declined and the company went out of business, he would forgive his nephew's indebtedness and his nephew would not owe the money due under the note. However, according to Joseph Spohrer, he never intended to forgive his nephew's debt if his nephew siphoned the money from the company. Stephen Spohrer testified that the language in the contract was intended to relieve him of payment of the note if the business did not "make money."
In each of the years, between 1984 and 1988, Spohrer Construction Company, Inc. earned substantial gross profits from the joint venture with T.L. James Company, Inc. The following shows the gross profits for each of those years:

 1984 $120,374.00
 1985 $ 89,928.97
 1986 $ 47,299.01
 1987 $171,169.76
 1988 $ 61,728.90

However, in each of those same years, the company failed to realize net profit. The following shows the net loss for each year during the five-year period:

 1984 
 1985 
 1986 
 1987 
 1988 

A review of the corporation's financial statements also reveals that, each year he owned the company, Stephen Spohrer earned almost $48,000.00 in salary. Additionally, Stephen Spohrer testified that the corporation had forgiven a $10,000.00 personal debt he owed and that at the time of trial he owed the corporation approximately $34,000.00, which represented sums he had borrowed from the corporation. Moreover, the year before the trial, Stephen Spohrer received a company car at the expense of the corporation. Further, although Stephen Spohrer contended that the company had been unprofitable since the date of the sale, which allegedly would have relieved him from the obligation to repay the note, he made approximately $3,000.00 in interest payments.
Considering all of the evidence, we find that the trial judge did not err in determining that, pursuant to the intent of the parties, Stephen Spohrer was not relieved from his obligation under the note. The trial court's determination that Spohrer Construction Company, Inc. was profitable is supported by the testimony and is not manifestly erroneous.

CONCLUSION
For the above reasons, the judgment of the trial court is affirmed. Costs of this appeal are to be borne by the defendant, Stephen Spohrer.
AFFIRMED.
NOTES
[1] In other recited provisions of the act of sale, Stephen Spohrer also agreed to confer other benefits upon Joseph Spohrer, which were issues before the trial court. However, none of these other provisions are pertinent to the issues raised in the instant appeal.
[2] Various other pleadings were filed by the parties, none of which are pertinent to the issues raised on appeal.
[3] Defendant subsequently applied for a new trial, which was denied by the trial judge on August 23, 1989.
[4] Although we will not address each error assigned individually, the opinion adequately disposes of all issues raised on appeal.