735 So.2d 30 (1999)
Arnold NATALI and Yvette Landry Natali, Plaintiffs-Appellants,
v.
William Daniel FROEBA and Lesley Hamilton Froeba, Defendants-Appellees.
No. 98-1354.
Court of Appeal of Louisiana, Third Circuit.
March 3, 1999.
Rehearing Denied April 14, 1999.
James Alvin Watson, Lake Charles, for Arnold Natali and Yvette Landry Natali.
Nicholas Pizzolatto, Jr., Lake Charles, for William Daniel Froeba and Lesley Hamilton Froeba.
Before: DOUCET, C.J., THIBODEAUX and WOODARD, JJ.
*31 DOUCET, Chief Judge.
The Plaintiffs, Arnold and Yvette Natali, appeal the trial court's decision to dismiss their suit to enforce a contract to buy and sell certain real property based on a finding that the contract was void.
The Natalis own a 236-acre tract of land in Calcasieu Parish. In 1996, the Defendants, William and Lesley Froeba, were planning to move to Calcasieu Parish and were looking for property to buy. To this end, they contacted Philip Breaux, a licensed real estate agent, asking to be shown property suitable for building a home and raising horses. One of the properties shown them was the Natalis' tract. The Froebas, through Breaux, tendered an offer to buy the property for $1060.00 per acre. The Natalis accepted the offer. The parties signed an "Agreement to Purchase and Sell," a copy of which is attached hereto as an appendix.
On August 17, 1996, Natali, through counsel, made demand on Froeba for performance of the contract. On September 23, 1996, Froeba wrote the following letter, which was filed into evidence at the trial of this matter.
September 23, 1996
James A. Watson
Roddy & Watson
400 East College P.O. Box 1743
Lake Charles, LA 70602
Re: Response to letter dated September II, 1996
Re: Purchase Agreement with Arnold Natali
Dear Mr. Watson,
It was my understanding that realtor, Philip Breaux with the Prudential Brokers/Landmark Realty, Inc. of Lake Charles who represents the seller, had relayed the following information concerning the Purchase Agreement, as I have been waiting for a refund of the $1000.00 deposit since the first week of July.
The Purchase Agreement is null and void based on both contingencies stated therein.
First and foremost, we had intended to use the property for breeding of horses which includes keeping and maintaining pregnant and lactating mares. The high tension electrical lines were of primary concern. After investigation, we have determined that the property is unsuitable for our purpose in that many horse breeders have experienced abnormally high rates of spontaneous abortion as well as low conception rates when mares are kept near such power lines that exist on Mr. Natali's property.
Secondly, upon the advice of my financial advisors, in light of the poor performance of my assets in recent months in the stock market, I am not capable, financially, of undertaking the transaction as stated in the Purchase Agreement. I have also been advised to not even make a formal request for financing as the resultant negative response would show up to my detriment for years to come.
I was left under the impression that this had all been related to Mr. Natali some time ago. As you can see, there is no point in proceeding with the Purchase Agreement any further, other than refunding the deposit, for which I have been patiently waiting.
 Sincerely,
 /s/ William D. Froeba
 William D. Froeba
Subsequently, on October 14, 1998, the Natalis filed this suit for specific performance of the contract or, alternatively, for damages representing, among other things, loss of profits, loss of the value of the money, and attorney's fees. The Froebas reconvened asking for return of their deposit, damages and attorneys' fees. The matter was tried to a judge on March 19, 1998. After hearing the evidence, the trial court dismissed both the main and reconventional demands. The court gave oral reasons for judgment in which it found *32 that the conditions made a part of the contract render it unenforceable. The Natalis appeal.

CONTRACT INTERPRETATION
The Plaintiffs first assert that the trial court erred in finding the contract unenforceable. The outcome of this appeal depends upon the rules of contract interpretation. The First Circuit in Hampton v. Hampton, Inc., 97-1779, pp. 5-7 (La.App. 1 Cir. 6/29/98), 713 So.2d 1185, 1188-90, thoroughly explained the law of contract interpretation:
Generally, legal agreements have the effect of law upon the parties, and, as they bind themselves, they shall be held to a full performance of the obligations flowing therefrom. Sanders v. Ashland Oil, Inc., 96-1751, p. 7 (La.App. 1st Cir.6/20/97), 696 So.2d 1031, 1036, writ denied, 97-1911 (La.10/31/97), 703 So.2d 29; Belle Pass Terminal, Inc. v. Jolin, Inc., 92-1544, 92-1545, p. 16 (La.App. 1st Cir.3/11/94), 634 So.2d 466, 479, writ denied, 94-0906 (La.6/17/94), 638 So.2d 1094; Spohrer v. Spohrer, 610 So.2d 849, 851-52 (La.App. 1st Cir.1992). In other words, a contract between the parties is the law between them, and the courts are obligated to give legal effect to such contracts according to the true intent of the parties. LSA-C.C. art.2045; Sanders v. Ashland Oil, Inc., 696 So.2d at 1036; Martin Exploration Company v. Amoco Production Company, 93-0349, p. 4 (La.App. 1st Cir.5/20/94), 637 So.2d 1202, 1205, writ denied, 94-2003 (La.11/4/94), 644 So.2d 1048; Spohrer v. Spohrer, 610 So.2d at 852. This intent is to be determined by the words of the contract when they are clear, explicit, and lead to no absurd consequences. LSA-C.C. art.2046; Sanders v. Ashland Oil, Inc., 696 So.2d at 1036; Woodrow Wilson Construction Company, Inc. v. MMR-Radon Constructors, Inc., 93-2346, p. 3 (La.App. 1st Cir.4/8/94), 635 So.2d 758, 759, writ denied, 94-1206 (La.7/1/94), 639 So.2d 1167; Belle Pass Terminal, Inc. v. Jolin, Inc., 634 So.2d at 479.
When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. LSA-C.C. art.2046; Sanders v. Ashland Oil, Inc., 696 So.2d at 1036; Belle Pass Terminal, Inc. v. Jolin, Inc., 634 So.2d at 479; Stafford v. Jennings-Norwood Farm and Irrigation Company, Inc., 586 So.2d 735, 737 (La.App. 3rd Cir.1991), writ denied, 590 So.2d 590 (La.1992); Investors Associates Ltd. v. B.F. Trappey's Sons Inc., 500 So.2d 909, 912 (La.App. 3rd Cir.), writ denied, 502 So.2d 116 (La.1987). The rules of interpretation establish that, when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit. LSA-C.C. art.2046, comment (b); Cashio v. Shoriak, 481 So.2d 1013, 1015 (La.1986); Sanders v. Ashland Oil, Inc., 696 So.2d at 1036; Belle Pass Terminal, Inc. v. Jolin, Inc., 634 So.2d at 479; Spohrer v. Spohrer, 610 So.2d at 852.
In such cases, the meaning and intent of the parties to the written contract must be sought within the four corners of the instrument and cannot be explained or contradicted by parol evidence. LSA-C.C. art. 1848; Sanders v. Ashland Oil, Inc., 696 So.2d at 1036; Belle Pass Terminal, Inc. v. Jolin, Inc., 634 So.2d at 479; Investors Associates Ltd. v. B.F. Trappey's Sons Inc., 500 So.2d at 912. Contracts, subject to interpretation from the instrument's four corners without the necessity of extrinsic evidence, are to be interpreted as a matter of law, and the use of extrinsic evidence is proper only where a contract is ambiguous after an examination of the four corners of the agreement. Sanders v. Ashland Oil, Inc., 696 So.2d at 1036; Martin Exploration Company v. Amoco Production Company, 637 So.2d at 1205; Investors Associates Ltd. v. B.F. Trappey's Sons Inc., 500 So.2d at 912.

*33 When the terms of a written contract are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity or show the intention of the parties. Sanders v. Ashland Oil, Inc., 696 So.2d at 1036; Martin Exploration Company v. Amoco Production Company, 637 So.2d at 1205; Belle Pass Terminal, Inc. v. Jolin, Inc., 634 So.2d at 480. In cases in which the contract is ambiguous, the agreement shall be construed according to the intent of the parties. LSA-C.C. art.2045. Intent is an issue of fact which is to be inferred from all of the surrounding circumstances. Kuswa & Associates, Inc. v. Thibaut Construction Co., Inc., 463 So.2d 1264, 1266 (La.1985); Commercial Bank & Trust Company v. Bank of Louisiana, 487 So.2d 655, 659 (La.App. 5th Cir.1986). A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and other contracts of a like nature between the same parties. LSA-C.C. art.2053; Sanders v. Ashland Oil, Inc., 696 So.2d at 1036-37; Allen v. Burnett, 530 So.2d 1294, 1303 (La.App. 2nd Cir.1988).
Whether a contract is ambiguous or not is a question of law. Sanders v. Ashland Oil, Inc., 696 So.2d at 1037; Spohrer v. Spohrer, 610 So.2d at 853; Myers v. Myers, 532 So.2d 490, 494 (La. App. 1st Cir.1988); Aycock v. Allied Enterprises, Inc., 517 So.2d 303, 309 (La. App. 1st Cir.1987), writs denied, 518 So.2d 512, 513 (La.1988). However, where factual findings are pertinent to the interpretation of a contract, those factual findings are not to be disturbed unless manifest error is shown. Sanders v. Ashland Oil, Inc., 696 So.2d at 1037; see also G/O Enterprises, Inc. v. Mid Louisiana Gas Company, 444 So.2d 1279, 1286 (La.App. 4th Cir.), writ denied, 446 So.2d 318 (La.1984); Universal Iron Works, Inc. v. Falgout Refrigeration, Inc., 419 So.2d 1272, 1274 (La.App. 1st Cir.1982). When appellate review is not premised upon any factual findings made at the trial level, but instead is based upon an independent review and examination of the contract on its face, the manifest error rule does not apply. Sanders v. Ashland Oil, Inc., 696 So.2d at 1037; Spohrer v. Spohrer, 610 So.2d at 853; Conoco, Inc. v. Tenneco, Inc. By and Through Tennessee Gas Pipeline Company, 524 So.2d 1305, 1312 (La.App. 3rd Cir.), writ denied, 525 So.2d 1048 (La.1988). In such cases, appellate review of questions of law is simply whether the trial court was legally correct. Sanders v. Ashland Oil, Inc., 696 So.2d at 1037; Spohrer v. Spohrer, 610 So.2d at 853, quoting from Borden, Inc. v. Gulf States Utilities Company, 543 So.2d 924, 928 (La.App. 1st Cir.), writ denied, 545 So.2d 1041 (La.1989).
After reviewing the record herein, we conclude that the trial court was not legally correct in interpreting the contract. The trial court, in interpreting the contract, stated that:
This agreement, to say the least, is certainly not artfully constructed, nor can it be construed rational [sic]. The contingencies that the purchaser had placed in the agreement; that is to say, Mr. Froeba, gives him a tremendous amount of latitude, as far as escape is concerned. And I have to assume that Mr. Natali, who is a successful businessman and has been in this community all of his life mostly, I suspect read the contract, and indicated on the stand he's done numerous, or copious amounts of real estate transaction, and he read this. And I can only conclude, notwithstanding all of the testimony in this case, that Mr. Natali had no right to rely on this contract as being bound [sic], binding him in any fashion whatever. There's no way in the world you can read this *34 contract and feel that you are bound you're binding the purchaser. There's no way. There's too many outs.
. . . .
This Court finds that the agreement does not bind any party; it's totally ineffective, and that the parties at signing it, neither party could rationally believe that that agreement bound either one, all of the testimony and all of the evidence notwithstanding.
After reviewing the record in light of the applicable law, both statutory and jurisprudential, we disagree with the trial court's application of the rules of statutory interpretation. As the Fifth Circuit stated in Morris v. Haas, 95-75, pp. 13-14 (La. App. 5 Cir. 5/30/95), 659 So.2d 804, 810-11, writs denied, 95-2519, 95-2545 (La.12/15/95), 664 So.2d 441:
The provisions of a contract are to be interpreted to give them effect. LSA-C.C. art.2049; Maier v. CMS & Associates, Inc., 601 So.2d 724 (La.App. 5 Cir. 1992) writ den. 605 So.2d 1148 (La. 1992). Words susceptible of different meaning must be interpreted as having the meaning that best conforms to the object of the contract. LSA-C.C. art. 2048; McCrory v. Terminix Service Co. Inc., 609 So.2d 883 (La.App. 4 Cir.1992). The contract as a whole must be considered in interpreting each provision. LSA-C.C. art.2050; Maier v. CMS and Associates, supra.
The rule of strict construction does not authorize the trial court to create an ambiguity where none exists by the exercise of inventive powers or a perversion of language. Further, the court may not make a new contract for the parties when the contract is expressed with sufficient clearness to convey the plain meaning of the parties. Massachusetts Mutual Life Ins. Co., v. Nails, 549 So.2d 826 (La.1989); Weeks v. T.L. James & Co., 626 So.2d 420 (La.App. 3 Cir.1993).
Further as the First Circuit stated in Spohrer, 610 So.2d at 853 (emphasis added):
A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties. LSA-C.C. art.2053. In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text and/or against the obligee and in favor of the obligor of a particular obligation. LSA-C.C. arts.2056 and 2057.
Although the trial court recognizes that the allegedly doubtful language was added by Mr. Froeba, it has interpreted that language so as to release the Defendants from the obligation.
With regard to the first condition, financing, the record does not establish whether the parties contemplated a particular type of financing. However, it is clear that the Defendants did not try to obtain financing of any type until this suit for specific performance had been filed against him. The loan was refused. However, he had applied for a loan in an amount greater than needed to buy the property. In light of this evidence, it does not appear that the Defendants made an appropriate good faith effort to obtain the financing necessary to buy the property.
Parole evidence introduced at trial established the meaning of the second condition examination of the right of way agreement to determine if the right of way would in any way interfere with the Purchaser's intended use. The Defendant testified that he wanted to breed horses on the property. He stated that when he saw the high-tension power lines on the property, he was concerned about the effects of the lines on the reproductive processes of the mares. He testified that he wanted to find out if his concerns were real. However, the record is devoid of testimony which *35 would confirm his concerns in this area. Froeba further testified that he checked on the electrical servitude by calling Entergy, the owner of the lines. He stated that he was told that he would not be able to plant under the lines but that he could fence it subject to Entergy's right to bring their equipment through the area. However, he did not testify as to how this servitude would prevent him from using the property to raise horses.
The initial burden of proof in a suit for specific performance is on the plaintiff. "Once a prima facie case has been established by the plaintiff by a preponderance of the evidence, the burden shifts to the defendant. Further, one who `asserts a fact must carry the burden of proving that fact by a preponderance of the evidence." Artificial Lift, Inc. v. Production Specialties, Inc., 626 So.2d 859, 862 (La.App. 3 Cir.1993), writ denied, 94-0112 (La.3/11/94), 634 So.2d 394. In this case, the Defendants asserted non-fulfillment of conditions upon which the contract was contingent. They failed to carry their burden of proving this. Therefore, the contract should be given effect.

DAMAGES
The Plaintiffs next argue that the trial court erred in failing to order specific performance or, alternatively to award damages for breach of contract.
Upon an obligor's failure to perform an obligation to deliver a thing, or not to do an act, or to execute an instrument, the court shall grant specific performance plus damages for delay if the obligee so demands. If specific performance is impracticable, the court may allow damages to the obligee.
Upon a failure to perform an obligation that has another object, such as an obligation to do, the granting of specific performance is at the discretion of the court.
La Civ.Code art.1986.
In this case, we find that specific performance is impracticable. Given the testimony by the Defendant, it is unlikely he could now obtain financing to buy the property. See Lombardo v. Deshotel, 94-1172 (La.11/30/94), 647 So.2d 1086. Therefore, an award of damages is the appropriate remedy. We find that the appropriate award is the difference between the purchase agreement and the actual sale price. See Bordelon v. Kopicki, 524 So.2d 847 (La.App. 3 Cir.1988). The agreement shows that the parties agreed to a price of $1060.00 per acre. From this amount, the broker was to receive $60.00 per acre. The record shows that the parcel contained approximately 236 acres. In March 1998, the Natalis entered an agreement to sell the property to Kenneth McCown for $700 per acre. Natali testified that this was the only offer he received for the property although it remained on the market the entire time. Therefore, the Natalis are entitled to receive the difference between the price agreed upon by Froeba and the sale price (minus the fee to the realtor) and the actual sale price, or $300 per acre for an award of $70,800.00.
The Natalis argue that they are also entitled to the interest they could have earned on the purchase price had the Froebas bought the property. The contract provides that: "Either party hereto, who fails to comply with the terms of this offer, if accepted is obligated to pay any fee, cost or expense incurred in the interim in connection with this transaction." Whether this provision can be construed to cover the payment of lost use of the purchase price, is questionable. However, we need not reach this issue because the Natalis failed to put on any evidence to show the amount of their loss due to loss of use of the money. In light of this failure of proof, no award can be made for this item.
With regard to attorney's fees for breach of contract, this court has stated:
Attorney fees are generally not due a successful litigant unless specifically provided for by statute or by contract. *36 Frank L. Beier Radio, Inc. v. Black Gold Marine, Inc., 449 So.2d 1014 (La. 1984); Lambert v. Byron, 94-854 (La. App. 3 Cir. 2/8/95), 650 So.2d 1201. A suit for breach of contract, absent a specific contractual provision for attorney fees, is not an exception to this general rule. If the parties fail to expressly provide an obligation to pay attorney fees, the law does not imply one. Rutherford v. Impson, 366 So.2d 944 (La.App. 1 Cir.1978), writ denied, 369 So.2d 140 (La.1979).
Willett v. Premier Bank, 97-187, p. 10 (La.App. 3 Cir. 6/4/97), 696 So.2d 196, 201
The Plaintiffs do not cite and we do not find any statutory provision for an award of attorney's fees in the situation before us. Therefore, we make no award of attorney's fees.

COSTS
Finally, the Plaintiffs contend that the trial court erred in dividing the court costs between the parties. They argue that all costs should have been assessed to the Defendants. In light of this court's holding with regard to breach, we agree. Therefore, all costs both at the trial level and on appeal, are to be paid by the Defendants.

CONCLUSION
For these reasons, the judgment of the trial court is reversed. Judgment is rendered in favor of the Plaintiffs and against the Defendants in the amount of $70,800.00 plus interest from date of judicial demand. Defendants are to pay all costs both at the trial level and on appeal.
REVERSED AND RENDERED.
*37