STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

25-395

LONGHORN EQUIPMENT LLC

VERSUS

RIGID AVIATION LLC

**********

ON APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20245681
HONORABLE CYNTHIA S. SPADONI, DISTRICT JUDGE

**********

JONATHAN W. PERRY
JUDGE

**********

Court composed of Van H. Kyzar, Candyce G. Perret, and Jonathan W. Perry, Judges.

REVERSED; RENDERED; AND REMANDED.

**Samuel E. Masur**
**John Philip Graf**
**Gordon, Arata, Montgomery, Barnett,**
**Mccollam, Duplantis & Eagan, LLC**
**1015 Saint John Street**
**Lafayette, Louisiana 70501**
**(337) 237-0132**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Longhorn Equipment, LLC**

**Murphy J. Foster, III**
**Jacob E. Roussel**
**Breazeale, Sachse & Wilson, L.L.P.**
**One American Place, 23rd Floor**
**P. O. Box 3197**
**Baton Rouge, Louisiana 70821-3197**
**(225) 387-4000**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Rigid Aviation, LLC**

**PERRY, Judge.**

This case involves the lease of a movable, a helicopter, and whether the lessee properly exercised an option to purchase the movable in accordance with the terms of the lease. The lessor and the lessee filed cross-motions for summary judgment. We reverse the trial court judgment in favor of the lessor and enter summary judgment in favor of the lessee.

## FACTS AND PROCEDURAL HISTORY

In January 2023,[1] Rigid Aviation, LLC ("Rigid Aviation") leased a helicopter ("the Lease") to Longhorn Equipment, LLC ("Longhorn"). At the time of the Lease, Rigid Constructors, LLC ("Rigid Constructors") was the sole member of Rigid Aviation, and Mickey Suire ("Suire") was the sole member of Longhorn. Suire also served as the Chief Operating Officer ("COO") of Rigid Constructors and had served in that capacity since June 2021. The Lease gave Longhorn the option to purchase the helicopter at the end of the Lease term at a nominal price of $5,000 provided two suspensive conditions were met at the one-year term of the Lease and that the option had to be exercised within ten days after the expiration of the term. For conciseness, we will provide the exact wording of the Lease purchase option later in this opinion.

On or about August 9, 2023, approximately five months prior to the expiration of the Lease, Suire personally hand-delivered a cashier's check drawn on the account of Suire's Investments, LLC ("Suire's Investments") for $5,000 made payable to Rigid Aviation. Suire gave the cashier's check to Mark Comeaux ("Comeaux"), the Chief Financial Officer ("CFO") of Rigid Constructors, who instructed him to

---

[1] Although the signed agreement of lease references the Effective Date as "_____, 2022," the Joint Stipulation of the parties shows that the Lease was made "[i]n January 2023[.]"

deliver the check to Tyler Pierret, the treasury manager in the finance group of Rigid Constructors; the delivery of the check occurred at Rigid Constructor's Lafayette office. The check stated: **PURPOSE PURCHASE N7898X HELICOPTER**. The check was deposited in Regions Bank into the account of Rigid Constructors. For the remainder of the Lease term and until August 30, 2024, when Suire resigned from Rigid Constructors, Rigid Aviation allowed Longhorn to use the helicopter and paid for all expenses associated with its use.

On September 5, 2024, Rigid Constructors accepted Suire's resignation and made demand on Longhorn to return any property of Rigid Constructors and all affiliated entities in Suire's possession, including the helicopter owned by Rigid Aviation. At that same time, a $5,000 wire was sent from Rigid Constructors' operating account to Suire's Investments, but Suire's Investments declined the payment. Longhorn failed to return the helicopter to Rigid Aviation and has maintained possession of the helicopter since at least January 2023.

Subsequently, Longhorn sued Rigid Aviation demanding to have the title of the helicopter transferred to Longhorn, asking for delay damages, and further seeking injunctive relief. Rigid Aviation answered the lawsuit and further responded with a reconventional demand for a declaratory judgment that it is the proper owner and title holder of the aircraft and additionally sought specific performance and/or mandatory injunctive relief compelling Longhorn to return the aircraft to Rigid Aviation as stated in the Lease. [2] Later, Rigid Aviation amended its reconventional demand requesting that "[i]n the event it is determined that Longhorn is the proper

---

[2] On November 13, 2024, the litigants agreed to a consent judgment on the preliminary injunction sought by both parties to this litigation. By agreement of the parties, Longhorn was granted continued possession of the helicopter during the pendency of the proceedings, and it was further agreed that the helicopter would not be flown during that time.

owner of the Helicopter (which is denied), Rigid Aviation seeks in the alternative to recover damages from Longhorn for all costs incurred by Rigid Aviation relating to the Helicopter during the period of Longhorn's purported ownership."

Longhorn then moved for summary judgment, requesting that the trial court find Rigid Aviation in breach of contract and order it to transfer title of the helicopter to Longhorn. Subsequently, Rigid Aviation moved for summary judgment, requesting a declaration that it is the proper owner and title holder of the helicopter, granting specific performance and/or mandatory injunctive relief compelling Longhorn to return the helicopter to Rigid Aviation, and dismissing Longhorn's claims.

After conducting a hearing on both motions and considering the joint stipulations of fact relied upon by Longhorn and Rigid Aviation, the trial court denied Longhorn's motion for summary judgment and granted Rigid Aviation's, finding that the Lease provided a specific time to exercise the option, and Suire failed to exercise the option to purchase the helicopter within that period. After judgment was signed on March 14, 2025, Longhorn was granted a suspensive appeal.

### APPELLANT'S ASSIGNMENTS OF ERROR

1. **Contract Interpretation—Timing of Exercise.** The trial court erred in construing the clause, "Lessee may exercise this option by sending written notice to Lessor within ten (10) days after the expiration of the Term," as unambiguously creating an exclusive post-expiration notice window and invalidating Longhorn's pre-expiration written notice and payment of the full purchase option price.

2. **Ambiguity and Conduct of the Parties.** The trial court erred by failing to recognize that the purchase-option clause is, at a minimum, ambiguous and by disregarding—or impermissibly resolving—material factual dispute bearing on the parties' intent. The record shows that Rigid (1) deposited the purchase option check (reading "PURPOSE PURCHASE N7898x HELICOPTER"), (2) did not demand post-term rent, (3) allowed Longhorn to retain possession of the helicopter for months after the lease expired without objection, and

(4) did not demand its return until Mr. Suire resigned from [Rigid Constructors]. Confronted with ambiguity and this course of conduct, the trial court was required to construe the clause against its drafter, [Rigid Aviation], but failed to do so.

3. **Purchase Condition vs. Timing of Notice.** The trial court erred in misreading the lease and Louisiana's obligation laws by treating the "no default" and "still employed upon expiration" provisions as preconditions to giving notice rather than as suspensive conditions on conveyance that were satisfied at expiration and, once fulfilled, relate back to validate Longhorn's earlier notice.

4. **Disposition on Summary Judgment.** The trial court erred in granting summary judgment for Rigid Aviation and denying summary judgment for Longhorn because genuine issues of material fact and competing reasonable interpretations precluded judgment for Rigid Aviation. The judgment should be reversed and rendered in Longhorn's favor (ordering specific performance) or, alternatively, reversed and remanded.

## SUMMARY JUDGMENT

As noted above, Longhorn appealed the judgment granting Rigid Aviation's motion for summary judgment and the judgment denying Longhorn's cross-motion for summary judgment. Ordinarily, an appeal may not be taken from the denial of a motion for summary judgment, which is an interlocutory judgment. La.Code Civ.P. art. 968. "However, when there is also an appeal from a final judgment, i.e., a trial court's grant of summary judgment, an interlocutory ruling may also be reviewed by the appellate court." *Douga v. Progressive Cas. Ins. Co.*, 16-543, p. 1 (La.App. 3 Cir. 12/7/16), 208 So.3d 394, 396 (n.2), *writ denied*, 16-2271 (La. 2/3/17), 215 So.3d 694.[3]

---

[3] In *Le Reve Bocage, LLC v. Hurricane Work, LLC*, 23-1319, p. 3 (La.App. 1 Cir. 9/26/24), 405 So.3d 734, 738. n.3, the court further explained:

> Although the denial of a motion for summary judgment is an interlocutory judgment and is appealable only when expressly provided by law, where there are cross motions for summary judgment raising the same issues, as in this case, this court can review the denial of a summary judgment in addressing the appeal of the granting of the cross motion for summary judgment.

4

Appellate courts review summary judgments de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. *In re Succession of Holbrook*, 13-1181 (La. 1/28/14), 144 So.3d 845. Summary judgment procedure is favored and shall be construed "to secure the just, speedy, and inexpensive determination of every action[.]" La.Code Civ.P. art. 966(A)(2); *Cupit o/b/o Cupit v. Twin City Fire Ins. Co.*, 17-918 (La.App. 3 Cir. 3/14/18), 240 So.3d 993. "[A] motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3).

The party seeking summary judgment must show that no genuine issue of material fact exists. La.Code Civ.P. art. 966(D)(1). "[I]f the mover will not bear the burden of proof at trial," he need not "negate all essential elements of the adverse party's claim," but he must show that there is an "absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." *Id.* If the movant meets his initial burden of proof, the burden shifts to "the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." *Id.*

In *George v. Coca-Cola Bottling Company United, Inc.*, 22-207, p. 8 (La.App. 3 Cir. 1/25/23), 355 So.3d 1193, 1198, we stated:

> [S]ummary judgment procedure has established specific rules for the presentation of supporting and opposing documents, as well as a specified method of objecting to those documents. Such a provision meets the "just" element of such a procedure, helps secure that such issues do not blindside litigants at the last moment, and allows the court to truly assess the proof to see whether there is a genuine need for trial.

Louisiana Code of Civil Procedure Article 966(D)(2) (emphasis added) further provides that "[t]he court shall consider only those documents filed or referenced in support of or in opposition to the motion for summary judgment and *shall not consider* any document that is excluded pursuant to a timely filed objection." In the present case, our task has been simplified in this regard as both parties have relied primarily on joint stipulations of fact.

## THE PURCHASE OPTION PROVISION

This litigation centers on Section 2 of the Lease that provides:

> **Term**. The term of this Lease shall begin on the Effective Date and shall end on December 31, 2023 (the "Term"), unless earlier terminated by Lessor [Rigid Aviation] as provided herein. Notwithstanding the foregoing, the Lease: (i) shall automatically terminate upon the termination of Lessee's[4] employment by Rigid Constructors, LLC for any reason; and (ii) may be terminated at any time, with or without cause, by Lessor [Rigid Aviation] or Lessee [Longhorn] upon thirty (30) days' prior written notice to the other party. At the expiration of the Term, Lessee [Longhorn] shall return the Aircraft in accordance with Section 14 below;[5] provided that upon such expiration of the Term, if Lessee [Longhorn] is not in default of this Lease and [Suire] is still employed by Rigid Constructors, LLC, the Lessee [Longhorn] shall have the option to purchase the Aircraft for a fixed price of $5,000. Lessee [Longhorn] may exercise this option by sending written notice to Lessor [Rigid Aviation] within ten (10) days after the expiration of the Term. Upon Lessee's [Longhorn's] exercise of such option, the Lessor [Rigid Aviation] shall transfer good and marketable title to the Aircraft to Lessee [Longhorn] free and clear of all liens and security interests.

---

[4] Although the Lease states "upon the termination of Lessee's employment," Longhorn, the Lessee, was never employed by Rigid Constructors. It is undisputed by the parties to this litigation that it was Suire who was employed by Rigid Constructors. Only in this way does this Lease provision make sense.

[5] Section 14 of the Lease states:

> **Additional Action; Expenses.** Lessee shall promptly execute and deliver to Lessor such further documents and take such further action as Lessor may reasonably request in order to carry out more effectively the intent and purpose of this Lease.

It is undisputed that there were four elements described in the Lease that had to be met for Longhorn to exercise the option to purchase the helicopter when the lease terminated on December 31, 2023: (1) Longhorn must not have been in default of the Lease; (2) Suire had to still be employed by Rigid Constructors at the termination of the Lease; (3) Longhorn "may exercise this option by sending written notice to Lessor within ten (10) days after the expiration of the Term"; and (4) "the Lessee [Longhorn] shall have the option to purchase the Aircraft for a fixed price of $5,000."

## ANALYSIS

From the outset, there is no question that Suire was still employed as the COO of Rigid Constructors on December 31, 2023, the termination date of the Lease. Additionally, attached to Longhorn's original petition is a photostatic copy of the $1,200 cashier's check remitted by Suire's Investments LLC to Rigid Aviation that bears the notation, "HELICOPTER ANNUAL LEASE 2023,"[6] and no other ground for default has been asserted. Longhorn and Rigid Aviation have jointly stipulated that: (a) Suire delivered the rental check; (b) Suire's Investments was the remitter of the rental check, Rigid Aviation was the beneficiary, and the purpose of the check was the payment of the helicopter rent for 2023; and (c) the check for the annual rental payment was deposited on or about January 19, 2023. Accordingly, there is no genuine issue of material fact regarding the first two elements necessary for Longhorn's exercise of the option. Therefore, for purposes of evaluating the cross-motions for summary judgment, we will examine the remaining elements.

---

[6] Rigid Aviation neither argued to the trial court nor here on appeal that this check notification did not constitute written notice.

*The exercise of the option: written notice*

Louisiana Civil Code Article 2668 provides that a lease is a "contract by which one party, the lessor, binds himself to give the other party, the lessee, the use and enjoyment of a thing for a term in exchange for a rent that the lessee binds himself to pay." Furthermore, as it relates to the purchase option contained in the Lease now before us, La.Civ.Code art. 2620 states, in pertinent part:

> An option to buy . . . is a contract whereby a party gives to another the right to accept an offer to . . . buy[] a thing within a stipulated time.

> An option must set forth the thing and the price, and meet the formal requirements of the sale it contemplates.

Stated another way, "[a]n option is nothing more than an elective right that, when exercised, ripens into a binding contract to buy and sell." *Ryan v. Doucet*, 21-32, p. 11 (La.App. 5 Cir. 8/25/21), 327 So.3d 577, 585 (quoting *Monroe Real Est. & Dev. Co., Inc. v. Sunshine Equip. Co. Inc.*, 35,555 (La. App. 2 Cir. 1/23/02), 805 So.2d 1200, 1203; *Major Commodity Corp. v. Cunningham,* 555 So.2d 525, 527 (La. App. 4 Cir. 1989)); *see also* La.Civ.Code art. 2621, Revision Comments—1993 (stating that "acceptance by the grantee of the offer contained in an option turns the option into a contract to sell, regardless of whether the object of the option involves movables or immovables.").

*Timing of Longhorn's Acceptance*

By joint stipulation, Longhorn and Rigid Aviation specified that: (a) on or about August 9, 2023, Suire delivered a $5,000 check; (b) the check identifies Suire's Investments as the remitter and identifies Rigid Aviation as the beneficiary, and the check further reads "PURPOSE PURCHASE N7898x HELICOPTER"; (c) if called to testify, Suire would state that he delivered the $5,000 check to Comeaux, the CFO

of Rigid Constructors, who instructed Suire to deliver the check to Pierret, Rigid Constructors' "treasury manager," who worked under Comeaux; (d) if called to testify, Pierret, an employee of Rigid Constructors, would state that Suire delivered the $5,000 check to him, and he deposited it; and (e) Suire delivered the $5,000 check at Rigid Constructors' office at 3861 Ambassador Caffery Parkway in Lafayette. Based upon the agreed upon facts, it is clear that Suire's hand-delivery of the check occurred almost five months before the Lease term expired. Under these facts, the trial court granted Rigid Aviation's motion for summary judgment and correspondingly denied Longhorn's.

Longhorn contends that these actions fulfilled the lease requirement that provided, "Lessee may exercise this option by sending written notice to Lessor within ten (10) days after the expiration of the Term." In making that argument, Longhorn, relying on Rigid Aviation's use of the word "may" in the Lease, argues that the Lease does not mandate a certain formality, timeframe, or location to exercise the purchase option. Supporting that assertion, Longhorn relies on La.Code Civ.P. art. 5053 that provides that "[t]he word 'shall' is mandatory and the word 'may' is permissive." Longhorn's interpretation of Section 2 of the Lease is that it had the option to purchase the helicopter from January 2023 until January 10, 2024. Thus, it contends that Suire's $5,000 payment made before the expiration of the Lease term, well before the end of the ten-day period described in the Lease, satisfied the notice requirement specified in the Lease.

To the contrary, Rigid Aviation argues that Longhorn's suggested interpretation fails to account for the wording of the Lease that precedes the permissive language upon which Longhorn relies, namely, "upon such expiration of the Term, if Lessee is not in default of this Lease and [Suire] is still employed by

9

Rigid Constructors, LLC, the Lessee shall have the option to purchase the Aircraft for a fixed price of $5,000." According to Rigid Aviation, this language, reasonably interpreted, means that Longhorn could exercise the option only after these conditions were met, that is, at the "expiration of the Term." Accordingly, Rigid Aviation's interpretation of Section 2 of the Lease is that Longhorn had only a ten-day window within which to exercise its option to purchase the helicopter.

In support of its argument, Rigid Aviation relies on La.Civ.Code art. 1767 that provides, in part, "[a] conditional obligation is one dependent on an uncertain event. If the obligation may not be enforced until the uncertain event occurs, the condition is suspensive." Its argument would comport with *Hampton v. Hampton, Inc.*, 97-1779, p. 8 (La.App. 1 Cir. 6/29/98), 713 So.2d 1185, 1190, that states that "[t]he right to enforce the obligation does not arise until the fulfillment of the suspensive condition, and the obligation may not be enforced until the condition is met."

Considering the opposing assertions of Rigid Aviation and Longhorn, we are faced with having to interpret the Lease.

The interpretation of a contract typically presents a question of law that may be resolved by summary judgment. *Caddo Gas Gathering L.L.C. v. Regency Intrastate Gas LLC*, 44-851 (La. App. 2 Cir. 11/12/09), 26 So.3d 233. In *Prejean v. Guillory*, 10-740, pp. 6–7 (La. 7/2/10), 38 So.3d 274, 279 (first alteration in original), the court stated:

> "[W]hen a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law." *Sims v. Mulhearn Funeral Home, Inc.*, 07-0054, p. 10 (La. 5/22/07), 956 So.2d 583, 590. "Interpretation of a contract is the determination of the common intent of the parties." La.Civ.Code art. 2045. The reasonable intention of the parties to a contract is to be sought by examining the words of the contract itself[] and not assumed. *Sims*, 07–0054 at p. 7, 956 So.2d at 589; *McConnell v. City of New Orleans*, 35 La. Ann. 273

(1883). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La.Civ.Code art. 2046. Common intent is determined, therefore, in accordance with the general, ordinary, plain and popular meaning of the words used in the contract. *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93-0911, p. 5 (La. 1/14/94), 630 So.2d 759, 763. Accordingly, when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit, as it is not the duty of the courts to bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the parties. *See Maloney v. Oak Builders, Inc.*, 256 La. 85, 98, 235 So.2d 386, 390 (1970); *McConnell*, 35 La. Ann. at 275. Most importantly, a contract "must be interpreted in a common-sense fashion, according to the words of the contract their common and usual significance." *Lambert v. Maryland Cas. Co.*, 418 So.2d 553, 559 (La.1982).

Additionally, "[a] provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective." La.Civ.Code art. 2049. Furthermore, "[e]ach provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La.Civ.Code art. 2050.

After carefully reviewing the parties' arguments, we find merit to Longhorn's argument. In reaching that conclusion, we observe that the option language clearly specifies the two conditions that must exist at the expiration of the Term and, as such, without these two conditions being successfully met, Rigid Aviation's obligation to honor the option no longer existed. These conditions were mandatory.

Our review of the Lease shows that the requirements specified for the written notice that Longhorn had to follow were expressed in language utilizing the permissive "may." As such, we find that although the Lease, as written, did mandate two suspensive conditions, it did not demand that providing notice within ten days after the expiration of the Term was the sole manner to signify acceptance of the

11

option.  Such a reading uses "the words of the contract" according to "their common and usual significance." *Prejean*, 38 So.3d at 279.

Having reached that conclusion, we find that it is important that the option included an expiration term, namely the tenth day after the Lease term ended; without that terminal date, the requirement set forth in La.Civ.Code art. 2620 that a stipulated time be set in the option would not have been met.  It is significant that Longhorn's acceptance of the option was completed well before the tenth day after the Lease term ended.

Even though Rigid Aviation correctly points out that the right to enforce the obligation did not arise until the suspensive conditions were met, at no time in the present case did Longhorn seek to enforce the purchase option before the two suspensive conditions occurred.  Although an obligation, such as the option in this case, implies a right to enforce it, that right did not immediately accrue when Longhorn notified Rigid Aviation that it exercised the option.  That right ripened when the suspensive conditions were met at the end of the Lease term.  *See* La.Code Civ.P. art. 423 (stating that "[a]n obligation implies a right to enforce it which may or may not accrue immediately upon the creation of the obligation."). Therefore, we find that Longhorn timely exercised the option.

We now turn to issues Rigid Aviation raises regarding Longhorn's $5,000 payment.

*Payment*

Rigid Aviation raises two issues regarding the $5,000 payment.  First, it contends that the cashier's check issued to exercise the Lease option was not provided by Longhorn, rather it was offered by Suire's Investment.  Second, it further contends that the payment was not made to Rigid Aviation at the address

12

provided in the Lease, namely, 3091 Highway 104, Opelousas, Louisiana 70570. We will address these issues in that order.

Louisiana Civil Code Article 1855 directly addresses whether the check drawn on Suire's Investments' account constituted the legal exercise of the payment on the option. It provides, in pertinent part, that "[p]erformance may be rendered by a third person, even against the will of the obligee, unless the obligor or the obligee has an interest in performance only by the obligor." La.Civ.Code art. 1855. The uncontested facts are that Longhorn's sole member is Suire, and Rigid Aviation's sole member is Rigid Constructors. Similarly, Suire's Investments' sole member is Suire. Lastly, it is uncontested that earlier on January 18, 2023, Suire delivered a $1,200 check identifying Suire's Investments as the remitter and Rigid Aviation as the beneficiary and further reads: "PURPOSE HELICOPTER ANNUAL LEASE 2023."

Based upon La.Civ.Code art. 1855 and these facts, particularly that the check to purchase the helicopter was handled in the same manner as the earlier annual rental check paid by Suire's Investments, we find no merit to Rigid Aviation's contention that Suire's Investments' check did not constitute the legal exercise of payment on the option. Had it been otherwise, Rigid Aviation would have contended in the trial court that the Lease would have been in default because Longhorn had not paid the annual rent for 2023. Thus, Longhorn would not have met one of the suspensive conditions necessary for it to exercise the purchase option provided in the Lease. Such argument was not made then and is now not supported with regard to Longhorn's exercise of the purchase option. Therefore, we find no merit to Rigid Aviation's argument in this regard.

13

Rigid Aviation next contends that the delivery of the check at the Lafayette office of Rigid Constructors was deficient because all notices under the Lease were to be sent to Rigid Aviation's Opelousas address. A close reading of Section 2 of the Lease does not provide instructions and requirements about notices and communications between the parties. However, Section 17 of the Lease states:

> **Notices.** Any notice or other communication required or permitted under this Lease or necessary or convenient in connection with this Lease shall be in writing and shall be deemed to have been given when delivered personally or deposited with a nationally recognized overnight courier service or in the United States Mail, postage prepaid, addressed at its address set forth below or at such other address as may be last known to the sender:
>
> If to Lessee, at: Longhorn Equipment, LLC Attn: Mickey Suire 2316 Mire Highway Rayne, LA 79578
>
> If to Lessor, at: Rigid Aviation, LLC 3091 Highway 104, Opelousas, Louisiana 70570
>
> or to such address or addressee as either party from time-to-time shall designate by written notice to the other.

Even though the Opelousas address of Rigid Aviation is provided, this section of the Lease also provides an alternative avenue of communication, namely, "or at such other address as may be last known to sender[.]" At 8:22 p.m. on January 11, 2023, Suire wrote an email before the lease was signed, asking, "who should I give the rigid aviation lease money to?" Austin Settoon, the Principal/Member of Settoon Capital, the company that owns Rigid Constructors and their affiliated companies, and the point man from the inception of the Lease, emailed Suire at 8:37 p.m. on January 11, 2023, stating as follows:

> Any lease payments should be payable to Rigid Aviation, who will then pay Rigid Constructors.
>
> I've included Mark [Comeaux] on this message chain and he can help you get set up on autopay or a schedule for whatever payment the lease requires, as well as how to carry out specifics.

14

Believe he'll only require a copy of the lease to refer to.

We can now start to try and lever the heli up and hopefully get some more liquidity!

In accordance with those instructions, the joint stipulation of facts and Suire's affidavit show that on January 18, 2023, Suire personally delivered a $1,200 check to Comeaux at the corporate headquarters of Rigid Constructors in Lafayette. A similar scenario occurred when Suire hand-delivered the $5,000 purchase option check on August 9, 2023; this time, however, Comeaux instructed Suire to bring the check to Pierret. Those checks were respectively deposited on January 19, 2023, and August 11, 2023, without anyone expressing any issues until after Suire resigned from Rigid Constructors on August 30, 2024, approximately a year later. In both instances, the checks were remitted to Rigid Aviation, presented at Rigid Constructors' Lafayette office, and deposited.

Suire's affidavit asserts: (1) Rigid Aviation has no employees or other equipment; (2) the Opelousas address is the personal address of the father of the founder of Rigid Constructors; and (3) from personal knowledge: (a) there is no Rigid Aviation sign there; (b) Rigid Aviation has no equipment or employees at that address; and (c) while he was COO of Rigid Constructors, Rigid Aviation formally changed its address from the Opelousas address to Rigid Constructors' corporate headquarters on Ambassador Caffery Parkway in Lafayette.

Even though Rigid Aviation has not traversed those assertions, it contends that the actions of Comeaux and Pierret cannot be construed as changing the notice requirements specified in the Lease as neither one was authorized to do so. For the following reasons, we find no merit to that argument.

15

Rather than relying on any unauthorized modification of the Lease, our evaluation is concluded on the language that Rigid Aviation used when it confected the Lease. Based on the undisputed material facts, we find that Longhorn's delivery of the $5,000 option check at the headquarters of Rigid Constructors properly constituted "such other address as may be last known" to Longhorn for such communication. For these reasons, we find no merit to the argument of Rigid Aviation.

## CONCLUSION

"Generally, legal agreements have the effect of law upon the parties, and, as they bind themselves, they shall be held to a full performance of the obligations flowing therefrom." *Belle Pass Terminal, Inc. v. Jolin, Inc.,* 92-1544, p. 16 (La. App. 1 Cir. 3/11/94), 634 So.2d 466, 479, *writ denied*, 94-906 (La.6/17/94), 638 So.2d 1094; *Spohrer v. Spohrer*, 610 So.2d 849, 851–52 (La.App. 1 Cir. 1992). In other words, "[a] contract between the parties is the law between them, and the courts are obligated to give legal effect to such contracts according to the true intent of the parties." La.Civ.Code art. 2045; *Martin Expl. Co. v. Amoco Prod. Co.*, 93-0349, p. 4 (La.App. 1 Cir. 5/20/94), 637 So.2d 1202, 1205, *writ denied*, 94-2003 (La.11/4/94), 644 So.2d 1048; *Spohrer*, 610 So.2d at 849.

On de novo review, we find the trial court erred in granting Rigid Aviation's motion for summary judgment and in denying Longhorn's motion for summary judgment. Accordingly, we reverse and set aside the trial court's summary judgment in favor of Rigid Aviation and grant Longhorn's motion for summary judgment. In addition, remand is appropriate to address Longhorn's request for delay damages.

The record further shows that on December 10, 2024, Rigid Aviation filed an Amended Reconventional Demand. At that time, Rigid Aviation stated that in the

16

event it is determined that Longhorn is the proper owner of the helicopter, it seeks to recover damages from Longhorn for all costs incurred by Rigid Aviation relating to the helicopter during the period of Longhorn's ownership. For that reason, too, this matter will be remanded to the trial court for further proceedings.

## DECREE

Upon de novo review of Rigid Aviation's motion for summary judgment and Longhorn's cross-motion for summary judgment, for the foregoing reasons, we find that there are no genuine issues of material fact and that Longhorn is entitled to judgment as a matter of law. Accordingly, we find that the trial court erred in its judgment dated March 24, 2025, denying Longhorn's motion for summary judgment and in granting Rigid Aviation's cross-motion for summary judgment. Thus, the judgment relative to the cross-motion for summary judgment in favor of Rigid Aviation is hereby reversed, and Longhorn's Motion for Summary Judgment is granted. As Longhorn is the proper owner of the Bell Helicopter, Model No. 206L4, U.S. Registration No. N7898X, Rigid Aviation is ordered to transfer good and marketable title to the Helicopter to Longhorn Equipment, LLC, free and clear of all liens and security interests, and this matter is remanded to the district court for further proceedings. Costs of this appeal are assessed to Rigid Aviation, LLC.

**REVERSED; RENDERED; AND REMANDED.**