# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-63

**VERNON A. VALENTINO, M.D.**

**VERSUS**

**HEART AND VASCULAR ASSOCIATES OF ACADIANA, P.C.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2015-6019
HONORABLE MARILYN CARR CASTLE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## JOHN E. CONERY
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, John E. Conery, and David E. Chatelain,\* Judges.

## REVERSED IN PART, AFFIRMED IN PART, AND RENDERED.

\*Honorable David E. Chatelain participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**Alan K. Breaud**
**Thimothy W. Basden**
**Breaud & Meyers**
**Post Office Drawer 3448**
**Lafayette, Louisiana  70502**
**(337) 266-2200**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Vernon A. Valentino, M.D.**

**Camille Bienvenu Poché**
**Karen T. Bordelon**
**Babineaux, Poché, Anthony & Slavich, L.L.C.**
**Post Office Box 52169**
**Lafayette, Louisiana  70505**
**(337) 984-2505**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Heart and Vascular Associates of Acadiana, P.C.**

**Jeff Horn, Jr.**
**Ohashi & Horn, LLP**
**325 North St. Paul Street, Suite4400**
**Dallas, Texas  75201**
**(214) 743-4170**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Heart and Vascular Associates of Acadiana, P.C.**

**CONERY, Judge.**

Dr. Vernon A. Valentino (Dr. Valentino) appeals a partial judgment in his favor based on an employment contract against Heart and Vascular Associates of Acadiana, P.C. (HAVAA) wherein the trial court awarded him $30,856.91, which included $22,405.26 as a bonus for 2014 and $8,451.65 for reimbursement of expenses incurred in 2015, plus judicial interest from December 3, 2015. The trial court denied Dr. Valentino's claim for $132,727.22 in past due wages as well as penalty wages pursuant to La.R.S. 23:631-632. The trial court awarded Dr. Valentino, $15,553.29 in attorney fees and litigation expenses, but denied the remaining portion of the $42,332.28 of attorney fees and litigation expenses requested by Dr. Valentino. In his appeal, Dr. Valentino seeks full past due wage reimbursement based on his employment contract with HAVAA, penalty wages, the full amount of attorney fees and litigation expenses for trial, and additional attorney fees for work done on appeal. HAVAA did not appeal the dismissal of its reconventional demand or answer the appeal as to any portion of the trial court's judgment in favor of Dr. Valentino. For the following reasons, we reverse in part, affirm in part, and render.

## FACTS AND PROCEDURAL BACKGROUND

Dr. Valentino is board certified both as a cardiologist and an interventional cardiologist. He has practiced medicine in the Lafayette, Louisiana area since 1991. Until 2014, Dr. Valentino was a partner in the Lafayette Heart Clinic (LHC) along with Dr. David Baker, the senior physician of the group, and Dr. Chris Mallavarapu. Dr. Brent Rochon was an employee of LHC. In 2013, Dr. Baker announced his retirement, and Dr. Mallavarapu moved his practice to upstate New

York.  These actions left Dr. Valentino as the only remaining partner in LHC, with Dr. Rochon as the only employee.

Dr. Kevin Courville is also an interventional cardiologist practicing in Lafayette, Louisiana, who was also a former partner in LHC.  Dr. Courville left LHC in 2012 to form HAVAA and become one hundred percent owner.  Due to the breakup at the end of 2013 of the partners in LHC, Dr. Valentino and Dr. Courville began discussions about Dr. Valentino joining HAVAA as a "profits-partner" with the goal of both physicians to eventually create what was termed as a "super-group" of cardiologists in Lafayette.  Despite the lack of a specific agreement between the two former partners, Dr. Valentino brought his book of patients and staff to HAVAA and began a fulltime practice with HAVAA on January 13, 2014.  Dr. Rochon also joined HAVAA in January 2014, but as he had only been an employee of LHC, his status was unclear from the beginning of his association with HAVAA.

There was no formal or written agreement in place when Dr. Valentino began practicing at HAVAA on January 13, 2014.  However, Dr. Courville allegedly told Dr. Valentino that his attorney in Dallas, Mr. Jeff Horn, was working on a contract to formalize an equal partnership agreement in HAVAA, with an eye toward forming the contemplated "super group" of cardiologists.  The two doctors also verbally agreed that Dr. Valentino would take a $40,000.00 draw each month, the same amount as his previous draw at LHC.  In anticipation of the promised partnership, Dr. Valentino loaned HAVAA $30,000.00 in March 2014 to assist with startup expenses and allegedly agreed to defer his draw for a short time until his billings through HAVAA could be realized.

Despite his alleged assurances to Dr. Valentino that the partnership agreement was in the works, Dr. Courville's testimony at trial indicates that from the beginning, he did not instruct his attorney to prepare a partnership agreement that would make Dr. Valentino a partner in HAVAA. He admitted that instructions to Mr. Horn were to draft a physician's employment agreement (PEA), making Dr. Valentino a HAVAA employee, not an equal partner. Indeed, in the answer to Dr. Valentino's lawsuit, HAVAA admitted that Dr. Valentino was an employee.

When no partnership agreement was forthcoming, Dr. Valentino requested the financial records for the term of his practice with HAVAA beginning January 13, 2014. Dr. Courville refused his request and indicated he would not divulge any financial information until the PEA was signed by Dr. Valentino. Dr. Valentino was first presented with the PEA in March 2014. Dr. Valentino signed the PEA in April 2014, with an effective date of January 1, 2014, and became an employee of HAVAA. Still, Dr. Valentino was never shown the requested financial information.

The PEA guaranteed Dr. Valentino a salary of $480,000.00 a year. He received his first check on May 5, 2014, for the two-week pay period following his signing of the PEA. Dr. Valentino immediately began seeking his past due wages retroactive to January 13, 2014 through April 18, 2014. Dr. Valentino admittedly began work with HAVAA on January 13, 2014. Though the PEA became effective on January 1, 2014, and does cover Dr. Valentino's entire tenure with HAVAA, he is only claiming past due wages from January 13, 2014. The PEA also provided that any bonus paid to Dr. Valentino was at the sole discretion of HAVAA, which is in direct conflict with their earlier verbal agreement. Dr.

3

Valentino had no part in determining the bonus or access to the financial basis for determining a bonus under the terms of the PEA.

The PEA was the only agreement written and signed between Dr. Valentino and HAVAA. It contained an "Entire Agreement" clause which provided that the PEA, "supersedes and merges all prior agreements and discussions between Physician and Employer."

In mid-2014, a meeting was held between Dr. Courville, Dr. Valentino, and Dr. Rochon to discuss the status of HAVAA. Once again, Dr. Valentino and Dr. Courville discussed the issue of Dr. Valentino's past due wages which totaled over $140,000.00 for January 13, 2014 through April 18, 2014. The details of the meeting will be thoroughly discussed in a subsequent portion of this opinion.

On July 16, 2014, Dr. Valentino again requested by email that HAVAA pay his past due wages and again sought to be permitted to review the financial records of HAVAA for the second quarter of 2014. His request was again denied. On October 7, 2014, Dr. Valentino made another request by email seeking his past due wages, repayment of his $30,000.00 loan made to HAVAA, the cost of supplies provided to the business, and a further request for HAVAA's financial records. Dr. Courville failed to respond to Dr. Valentino's October 7, 2014 email.

Dr. Valentino resigned from HAVAA on July 27, 2015, via a letter of resignation delivered to Dr. Courville. In his resignation letter, Dr. Valentino made yet another demand for his past due wages. Dr. Valentino testified at trial that he never received a written response to his demands, only that Dr. Courville stated that he would speak with his attorney about the issue. No further response was forthcoming from Dr. Courville or his attorney.

When no response to his demand for past due wages and other expenses allegedly owed was received from Dr. Courville, Dr. Valentino engaged counsel, who made a formal written demand on his behalf to HAVAA for his past due wages from January 13, 2014 through April 18, 2014, along with other expenses and benefits which are not included in Dr. Valentino's claim on appeal. HAVAA failed to respond to Dr. Valentino's attorney's demand letter. On December 3, 2015, Dr. Valentino filed this petition entitled, "PETITION FOR UNPAID WAGES, BENEFITS, AND REIMBURSABLE EXPENSES AND FOR PENALTY WAGES AND ATTORNEY FEES[.]"

HAVAA answered Dr. Valentino's petition and admitted that Dr. Valentino began his employment at HAVAA on January 13, 2014, and was first paid wages on May 5, 2014. HAVAA also admitted that HAVAA had received a demand for past due wages from Dr. Valentino as well as his counsel's formal demand for the past due wages dated September 24, 2015. HAVAA responded to the petition with a number of defenses. For the first time, in its reconventional demand, HAVAA claimed that Dr. Valentino had breached the terms of the PEA by working at Abbeville General Hospital while he was an employee of HAVAA.

The summary proceeding allowed in a wage dispute pursuant to La.R.S. 23:631 began on March 18, 2016. After testimony began, the trial court determined the case could not be completely resolved in a summary proceeding and reset the case for trial on the merits as an expedited ordinary proceeding on June 22, 2016. At the beginning of the trial, the trial court without objection ordered that all testimony and evidence introduced at the March 18, 2016 trial would be considered a part of the trial record. Both Dr. Valentino and Dr. Courville testified live at the trial on the merits.

5

At the close of trial, the matter was taken under advisement by the trial court, who then issued written reasons in a ruling dated July 7, 2016. A judgment in accordance with the trial court's ruling was signed by the trial court on August 30, 2016. Dr. Valentino timely filed this appeal of the trial court's denial of his full past due wages, penalty wages, and failure to award the full amount of attorney fees and litigation expenses, and requested additional attorney fees for work done on appeal. HAVAA did not answer the appeal or file a separate appeal of the denial of its reconventional demand.

## ASSIGNMENTS OF ERROR

Dr. Valentino asserts the following assignments of error on appeal:

1. The trial court erred in failing to award Dr. Valentino the wages owed to him by HAVAA under the Physician Employment Agreement for the work actually performed between January 13, 2014 and April 18, 2014.

2. The trial court erred in finding that Dr. Valentino agreed to work for free between January 13, 2014 and April 18, 2014.

3. The trial court erred in denying Dr. Valentino's claim for penalty wages under La. R.S. 23:632.

4. The trial court erred in refusing to award Dr. Valentino all of the attorney fees and litigation expenses which he incurred in the litigation of his claim for unpaid wages.

## LAW AND DISCUSSION

*Standard of Review*

In *Hayes Fund for First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC*, 14-2592, p. 8 (La. 12/8/15), 193 So.3d 1110, 1115-16, the supreme court reiterated the duty of appellate courts in a manifest error review and stated in pertinent part:

In all civil cases, the appropriate standard for appellate review

6

of factual determinations is the manifest error-clearly wrong standard, which precludes the setting aside of a trial court's finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety. *Cenac v. Public Access Water Rights Ass'n*, 02-2660, p. 9 (La. 6/27/03), 851 So.2d 1006, 1023. Thus, a reviewing court may not merely decide if it would have found the facts of the case differently. *Hall v. Folger Coffee Co.*, 03-1734, p. 9 (La. 4/14/04), 874 So.2d 90, 98. Rather in reversing a trial court's factual conclusions with regard to causation, the appellate court must satisfy a two-step process based on the record as a whole: there must be no reasonable factual basis for the trial court's conclusion, and the finding must be clearly wrong. *Stobart v. State through Dept. of Transp. and Development*, 617 So.2d 880, 882 (La.1993).

This test requires a reviewing court to do more than simply review the record for some evidence, which supports or controverts the trial court's findings. The court must review the entire record to determine whether the trial court's finding was clearly wrong or manifestly erroneous. *Parish Nat. Bank v. Ott*, 02-1562, pp. 7-8 (La. 2/25/03), 841 So.2d 749, 753-54. The issue to be resolved on review is not whether the judge or jury was right or wrong, but whether the judge's or jury's factfinding conclusion was a reasonable one. *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989); *Canter v. Koehring Co.*, 283 So.2d 716, 724 (La.1973).

Errors of law, however, are reviewed *de novo*. *Foti v. Holliday*, 09-93 (La. 10/30/09), 27 So.3d 813. Accordingly, when reviewing an issue of law, we "render[ ] judgment based on the record without deference to the legal conclusions of the lower courts." *Id.* at 817

***Assignment of Errors One and Two – The Physician Employment Agreement-Past Wages From January 13, 2014 -April 18, 2014***

Dr. Valentino filed suit for payment of his past due wages pursuant to La.R.S. 23:631 which states, in pertinent part:

A.(1)(b) Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday for the pay cycle during which the employee was working at the time of separation or no later than fifteen days following the date of resignation, whichever occurs first.

. . . .

B. In the event of a dispute as to the amount due under this Section, the employer shall pay the undisputed portion of the amount due as provided for in Subsection A of this Section. The employee shall have the right to file an action to enforce such a wage claim and proceed pursuant to Code of Civil Procedure Article 2592.[1]

HAVAA argues that Dr. Valentino was not entitled to payment of past wages under the terms of the PEA for the period from January 13, 2014 to April 18, 2014, because he verbally agreed to waive these initial past wages in discussions with Dr. Courville when it was contemplated that a partnership between the two physicians and the eventual formation of a "super group" of cardiologists was the goal.

The trial court in its ruling found that despite the express terms of the written PEA, "the weight of the evidence establishes that the compensation for the initial period when no draws or salary were received was to be based upon the profitability of the physician and compensated in the form of bonuses[.]" The trial court calculated the amount for bonuses in 2014 to be $22,405.26 plus $8,451.65 for unreimbursed expenses. The trial court gave no explanation for the calculation and awarded those sums to Dr. Valentino, plus interest. No appeal was taken by either HAVAA or Dr. Valentino from that portion of the Judgment and this portion of the trial court's judgment is now final.

*Past Due Wages - PEA*

In denying Dr. Valentino's claim for past wages under the PEA, the trial court correctly stated, "Dr. Valentino's suit for wages is not based upon a claim of

---

[1]Louisiana Code of Civil Article 2592 authorizes the use of summary proceedings in all matters in which it is permitted. "An employee is granted the right to proceed against an employer for a wage claim via summary proceeding[.]" *Goulas v. B&B Oilfield Servs, Inc.*, 10-934, 10-1393, p. 3 (La.App. 3 Cir. 8/10/11), 69 So.3d 750, 755, *writ denied*, 11-1951 (La. 11/14/11), 75 So.3d 945.

8

entitlement to profit realized from his practice. Rather, his claim is for salary payment pursuant to an employment agreement."

The record clearly demonstrates that the initially discussed oral agreement between Dr. Valentino and Dr. Courville never came to fruition. Dr. Courville testified in his deposition, taken as the representative of HAVAA, that when Dr. Valentino first joined HAVAA in January 2014, he did so in the capacity of a "profits partner[.]" However, the PEA drafted by Dr. Courville's attorney at his request clearly and unequivocally designated Dr. Valentino as an employee of HAVAA with a salary of $40,000.00 per month effective January 1, 2004, plus bonuses to be determined in the sole discretion of HAVAA. After working for over three months at HAVAA, in essence, Dr. Courville presented Dr. Valentino with the PEA as a take it or leave it proposition. Dr. Valentino was then faced with either signing the agreement, which provided for an effective term beginning on January 1, 2014, or having to move his practice again without payment for all the work done previously during his approximately four months with HAVAA.

It is especially important to note that Dr. Courville insisted that the PEA be signed by Dr. Valentino before Dr. Valentino could be paid any monies from HAVAA, and that Dr. Courville drafted the agreement in its entirety without any input from Dr. Valentino. As a consequence, Dr. Valentino signed the PEA, as did Dr. Courville on behalf of HAVAA. Dr. Valentino received his first check beginning with the two week pay period prior to May 1, 2014. No amounts were paid for the period January 13, 2014 through April 18, 2014 for the past due wages in dispute in this case.

The specific provisions of the PEA completely support Dr. Valentino's claim for past wages and undermine the findings of the trial court that the PEA,

9

which was retroactive to January 1, 2014, does not provide a basis for the recovery of past wages due to Dr. Valentino, but only provides the framework for a possible bonus based on the performance of the physician. The PEA states in pertinent part:

**PHYSICIAN EMPLOYMENT AGREEMENT**

**THIS PHYSICIAN EMPLOYMENT AGREEMENT** (this "Agreement") is made and entered into effective as of January 1, 2014 (the "Effective Date") by and between Heart & Vascular Associates of Acadiana, PC, a Louisiana corporation ("Employer"), and Vernon A. Valentino, an individual ("Physician").

**RECITALS:**

**WEAREAS,** employer desires to hire Physician as a cardiologist, which is a full-time, exempt employee position, and Physician desires to accept such employment;

**AGREEMENT:**

**NOW, THEREFORE,** for mutual consideration received by each party hereto, Employer and Physician agree as follows:

1. **Employment, Compensation, and Benefits.**

a. **Employment**. Effective as of the Effective Date, Employer employs Physician, and Physician hereby accepts such employment. …

b. **Compensation.**

(i) **Salary.** Physician shall receive a salary at the rate of $480,000 per year, payable in equal monthly installments, on the first day of each month, subject to state and federal income tax withholding, employment taxes, and any other deductions which may be required by law or agreed upon by Employer and Physician.

(ii) **Bonus.** Employer may also pay Physician bonuses from time to time as determined in Employer's sole and absolute discretion. …

(iii) Employer and Physician hereby agree and acknowledge that they have negotiated in good faith on an arm's length basis to establish the compensation and benefits provided for under this Agreement and to their best knowledge and belief are

10

consistent with the fair market value of the services to be rendered by Physician under this Agreement and they are intended to comply with applicable federal and state laws and regulations regarding payments under a bona fide employment relationship.

The PEA was the only agreement written and signed between Dr. Valentino and HAVAA. The PEA also contained in the last numbered section an "Entire Agreement" clause which provided:

> **31.** **Entire Agreement.** This Agreement contains the entire agreement of Physician and Employer with respect to the subject matter hereof and **supersedes and merges all prior agreements and discussions between Physician and Employer**. The headings contained in this Agreement are included for convenience and shall not be construed to limit the protections to Employer provided by the test that follows. **This agreement may not in whole or in part be changed, modified, amended or waived orally or through acquiescence but only by agreement in writing signed by Physician and an authorized representative of Employer**.

(Emphasis added.)

The PEA also states just above the signature lines, which do not contain a date of signing, "**IN WITNESS WHEREOF**, Physician and Employer have executed this Agreement effective as of the Effective Date." The first paragraph of the PEA has an "Effective Date" of January 1, 2014.

HAVAA stated in its briefing to this court that Dr. Valentino verbally agreed to "waive" the $40,000.00 a month salary, which would have begun for him on January 13, 2014, ending on April 18, 2014. However, testimony at trial does not support this conclusion. Dr. Valentino testified at trial that when he initially joined HAVAA, his intention was to become a partner, and therefore, he was willing to "defer" his initial salary beginning January 13, 2014 in order to facilitate the formation of the "super group" as discussed with Dr. Courville. He never agreed to waive any payments owed to him. However, once it became clear that under the PEA, Dr. Valentino was only an employee of HAVAA, he immediately began to

11

request his past due wages under the PEA. When he resigned his position with HAVAA in August 2015, formal demand was again made by both he and his attorney that he be paid his past wages for the original work beginning on January 13, 2014. No claim was made by either HAVAA or Dr. Courville that Dr. Valentino had violated the PEA by doing work at Abbeville General Hospital.

A panel of this circuit in the case of *Porbeck v. Indus. Chem. (US) Ltd.*, 13-1241, pp. 3-4 (La.App. 3 Cir. 3/5/14), 134 So.3d 234, 236-37, succinctly stated the law applicable to a contract such as the one at issue in this case:

> "A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished." La.Civ.Code art. 1906. It is formed by the consent of the parties, via offer and acceptance. La.Civ.Code art. 1927.
>
> > Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent." Unless otherwise specified in the offer, there need not be conformity between the manner in which the offer is made and the manner in which the acceptance is made.
>
> *Id.*
>
> A contract is interpreted by determining the common intent of the parties. La.Civ.Code art. 2045. It further has the force of law between the parties for claims arising from the contract. La.Civ.Code art. 1983. A trial court's factual findings with regard to the intent of the parties is reviewed on appeal pursuant to the manifest error-clearly wrong standard of review. *See Rosell v. ESCO*, 549 So.2d 840 (La.1989).
>
> "The employer-employee relationship is a contractual relationship. As such, an employer and employee may negotiate the terms of an employment contract and agree to any terms not prohibited by law or public policy." *Newsom v. Global Data Systems, Inc.*, 12-412, p. 4 (La.App. 3 Cir. 12/12/12), 107 So.3d 781, 785, *writ denied,* 13-429 (La.4/5/13), 110 So.3d 595. A breach of a contract occurs when a party fails to perform in accordance with the contract terms, which failure results in damages to the other party. *Favrot v. Favrot,* 10-986 (La.App. 4 Cir. 2/9/11), 68 So.3d 1099, *writ denied*, 11-636 (La.5/6/11), 62 So.3d 127. The party seeking the performance of an obligation bears the burden of proving the existence of the

12

obligation by a preponderance of the evidence. La.Civ.Code art. 1831; *Natali v. Froeba*, 98-1354 (La.App. 3 Cir. 3/3/99), 735 So.2d 30, *writ denied*, 99-1442 (La.9/17/99), 747 So.2d 1106.

Dr. Courville is claiming that the PEA written contract was not the sole agreement between the parties, as an earlier verbal agreement between the parties, to fund a "partnership" and a "super group of cardiologists" controlled. Louisiana Civil Code Article 1846 provides in pertinent part, "If the price or value is in excess of five hundred dollars, the contract must be proved by at least one witness and other corroborating circumstances."

The case of *Lanier Implement Co., Inc. v. G & H Seed, Inc.*, 99-1591, p.10 (La.App 3 Cir. 3/1/00), 756 So.2d 569, 574-75, succinctly provides the requirements for the proof required for an oral contract:

> A party who claims the existence of a contract between himself and his opponent has the burden of proving the existence of the obligation. La.Civ.Code art. 1831; *Pennington Const., Inc. v. R.A. Eagle Corp.*, 94-0575 (La.App. 1 Cir. 3/3/95); 652 So.2d 637. An oral contract over $500 must be proved by at least one credible witness and other corroborating circumstances. La.Civ.Code art. 1846. To meet the burden of proof of an oral contract the contract must be proved by a witness and other corroborating circumstances. *Id.* A party may serve as his own witness. *Pennington Construction*, 652 So.2d 637. The corroborating circumstances that are required must come from a source other than the plaintiff. *Id.*

*See also Prime Income Asset Mgmt., Inc. v. Tauzin*, 07-1380 (La.App 3 Cir. 4/30/08), 981 So.2d 897.

Testimony in the record on appeal, including the testimony of Dr. Courville at trial, clearly provides that there is no corroborating evidence that Dr. Valentino verbally or otherwise ever agreed to "waive" his claimed past wages, "Q. But you have no corroborating evidence of this verbal agreement to present to the court today? A. I do not."

13

Dr. Courville's statement that he did not have the necessary corroborating evidence, which must come from another source, is borne out in the deposition testimony of Dr. Rochon, who when questioned about any conversations with Dr. Valentino about salaries stated, "A. I wish I would have [taken] notes during these conversations, but I can't really comment on what he was saying. Q. You don't remember? A. Not really, no."

Dr. Courville's wife, Mary Courville, was responsible for carrying out various financial services for HAVAA, including issuing payroll payments. Like Dr. Rochon, she also testified by deposition that she had no knowledge of any discussions between her husband and Dr. Valentino regarding the payment of salaries under the PEA or Dr. Valentino's intention to waive his claim to past wages.

Ms. Barrileaux testified by deposition that she did not have any "minutes, notes, or recordings" of any meeting between, Drs. Valentino, Courville, and Rochon, that may have taken place in the first "four to six months" of 2014. She further testified with respect to the payment of Dr. Rochon and Dr. Valentino for work done beginning in January 2014, "From what I gathered during that conversation, they weren't going to take an income or salary for the first several months." Ultimately, Ms. Barrileaux clarified her testimony when asked the following:

Q. So they would get money when the money came in?
A. No. I think the conversation went that they wouldn't. They would just not take an income or forgo it –
Q. Work for free.
A. -- if you will.
Q. Work for free?
A. If you want to call it that."

14

However, the HAVAA Minutes of the meeting prepared by Ms. Barrileaux, which were admitted into evidence at trial, are in stark contrast to and do not support Ms. Barrileaux's deposition testimony, and, in fact are in direct conflict with her testimony. In the HAVAA Minutes, introduced in evidence at trial entitled "Thoughts about 2014[,]" there is a notation about a lengthy discussion between Dr. Courville and Dr. Valentino's demand for his the past due wages of approximately $140,000.00. In contrast to Ms. Barrileaux's testimony, the HAVAA Minutes state, "Dr. Valentino stated that in the contract his salary is guaranteed. Dr. Courville said he would honor the contract if that is what he wants even though he has already financially fronted more than his share." There is no mention whatsoever of Dr. Valentino ever agreeing to waive his past due wages.

Based on this court's review of the record before us we find that the trial court was manifestly erroneous in its conclusion that the PEA effective January 1, 2014 did not contain the full agreement between the parties. The wording of the contract was specific and the PEA contained an "Entire Agreement" clause which specifically stated that it "supersedes and merges all prior agreements and discussions between Physician and Employer."

The trial court's finding that Dr. Valentino was only owed a bonus and not his salary pursuant to the PEA from January 13, 2014 through April 18, 2014, was clearly erroneous and not supported by the clear language of the contract at issue. The record does not contain any support for the trial court's conclusion that there was any other oral agreement between the parties, which would have required "corroborating circumstances" to come from a source other than Dr. Courville, who testified he had none. *Lanier*, 756 So.2d at 575.

We therefore reverse that portion of the trial court's judgment of August 30, 2016, denying Dr. Valentino's claim for past due wages. We find that Dr. Valentino is entitled to be paid his salary pursuant to La.R.S. 23:631. We award Dr. Valentino the amount of his unpaid salary from January 13, 2014 through August 18, 2014, in the amount of $132,727.22[2] plus interest from the date of judicial demand.

### *Assignment of Error Three - Louisiana Revised Statute 23:23:632 - Penalties*

Louisiana Revised Statute 23:632 provides in pertinent part with respect to penalties that may be assessed against an employer for a violation of La.R.S. 23:631:

> A. Except as provided for in Subsection B of this Section, any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages.

> B. When the court finds that an employer's dispute over the amount of wages due was in good faith, but the employer is subsequently found by the court to owe the amount in dispute, the employer shall be liable only for the amount of wages in dispute plus judicial interest incurred from the date that the suit is filed. If the court determines that the employer's failure or refusal to pay the amount of wages owed was not in good faith, then the employer shall be subject to the penalty provided for in Subsection A of this Section.

The trial court found that Dr. Valentino was not entitled to any past due wages under La.R.S. 23:631 because it found the PEA did not completely set forth the true agreement between the parties, a finding we reversed. Therefore, there is no finding of fact by the trial court on the issue of penalties pursuant to La.R.S.

---

[2]Counsel for Dr. Valentino explained the past due wage calculation in brief to the trial court and this court, and counsel for HAVAA has not challenged the amount of that calculation, only that it was not due.

16

23:632(B). Since this court has now reversed the trial court and found that Dr. Valentino is entitled to his past due wages under the PEA, we must determine by *de novo* review of the record whether Dr. Valentino is entitled to "penalty wages[,]" under the applicable statute, or whether HAVAA is entitled to the application of the "good faith" exception to the penalty provision contained in La.R.S. 632(B) which states:

> When the court finds that an employer's dispute over the amount of wages due was in good faith, but the employer is subsequently found by the court to owe the amount in dispute, the employer shall be liable only for the amount of wages in dispute plus judicial interest from the date that the suit is filed."

In the case of *Winkle v. Advance Prods. & Sys., Inc.*, 98-694, pp. 14-15 (La.App. 3 Cir. 10/28/98), 721 So.2d 983, 990-91, this court stated the following with regard to the award of penalties pursuant to La.R.S. 23:632:

> Under the provisions of La.R.S. 23:632, to recover penalty wages, the claimant must show that "(1) wages were due and owing; (2) demand for payment thereof was made where the employee was customarily paid; and (3) the employer did not pay upon demand." *Hebert* [*v. Ins. Ctr., Inc.*], 97–298, p. 9 [(La.App. 3 Cir. 1/7/98),] 706 So.2d [1007,] 1013. Although equitable defenses are not expressly provided for in the statute, the Louisiana Supreme Court has interpreted the statute as a "coercive means" to compel an employer to pay an employee within the time limits set forth in La.R.S. 23:631. *Beard* [*v. Summit Inst. for Pulmonary Med. & Rehab., Inc.*,] 97-1784, p. 7 [(La. 3/4/98),] 707 So.2d [1233,] 1236. Accordingly, the court has held "that the penalty must be strictly construed and may yield to equitable defenses." *Id.* If there is " 'a good-faith non-arbitrary defense to liability for unpaid wages, i.e., a reasonable basis for resisting liability' ", the court may refrain from imposing penalty wages upon the employer. *Id. quoting Carriere v. Pee Wee's Equipment Co.*, 364 So.2d 555, 557 (La.1978). "Reliance on an unlawful company policy does not constitute a good faith non-arbitrary defense to liability for unpaid wages." *Beard*, 97–1784, p. 9; 707 So.2d at 1237. " 'Where there is a bona fide dispute over the amount of wages due, courts will not consider failure to pay as arbitrary refusal and generally will refuse to award penalties.' " *Hebert*, 97-298, p. 9; 706 So.2d at 1013 (quoting *Barrilleaux v. Franklin Found. Hosp.*, 96-0343 (La.App. 1 Cir. 11/8/96), 683 So.2d 348, *writ denied*, 96-2885 (La. 1/24/97), 686 So.2d 864). The issue of

[the employer's] bad faith is a question of fact. Accordingly, it is subject to the manifest error standard of review. *Hebert*, 97-298; 706 So.2d 1007; *Domite v. Imperial Trading Co., Inc.*, 94-16 (La.App. 3 Cir. 8/3/94), 641 So.2d 715.

*See also Fahed v. Ayesh*, 16-748 (La.App. 3 Cir. 2/15/17), 211 So.3d 1179.

Although the trial court initially held a summary proceeding on March 18, 2016, as allowed by La.R.S. 23:631, during the hearing, the trial court determined that the testimony and the issue of possible oral agreements between Dr. Courville and Dr. Valentino presented issues that fell outside the purview of La.R.S. 23:631 and the terms of the PEA. The trial court sustained HAVAA's objection to the summary nature of the proceedings, allowed limited discovery, and set the matter as an expedited ordinary proceeding for May 10, 2016.

After hearing testimony and receiving the evidence at trial, as previously discussed, the trial court found in favor of Dr. Valentino on the issue of bonuses and expenses, but denied his claim for past due wages, under the PEA, and penalties. The trial court awarded only a portion of Dr. Valentino's claim for attorney fees and litigation expenses.

Dr. Valentino argues that HAVAA has failed to present any valid defenses to its failure to pay past due wages. However, we find that the facts and circumstances of this case warrant the application of the "good faith" exception in La.R.S. 23:632. The transcript of the summary proceedings and the trial transcript demonstrate that the trial court found that based on the testimony and documents filed, the case was outside the usual straightforward claim for past due wages that La.R.S. 23:631 and La.R.S. 23:632 were designed to address. The factual scenario was further complicated as the litigants were two cardiologists who were initially attempting to form a partnership that failed to materialize. It was unfortunate that

18

the circumstances changed between Dr. Valentino and Dr. Courville from that of potential partners to employer-employee, a decision made entirely by Dr. Courville, but based on the record as reviewed in its entirety, we find that penalty wages are not warranted in this case and decline to award them to Dr. Valentino under La.R.S. 23:632.

**Assignment of Error Four -** *Louisiana Revised Statute 23:23:632(C) - Attorney Fees*

Louisiana Revised Statute 23:632(C) provides with respect to attorney fees that may be awarded to an employee for an employer's violation of La.R.S. 23:631:

> Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.

Further, as our court has stated:

> **Reasonable attorney fees are recoverable if the employee files a "well-founded" suit, even if penalty wages are not owing.** The attorney fees provision is not subject to any equitable defenses that may be raised by the employer.
>
> **An employee's suit is deemed "well-founded" if he receives a judgment in his favor entitling him to past due wages.**

*Hebert v. Ins. Ctr., Inc.*, 97-298, pp. 12-13 (La.App. 3 Cir. 1/7/98), 706 So.2d 1007, 1014, *writ denied*, 98-353 (La. 3/27/98), 716 So.2d 888 (citations omitted) (emphasis added).

In its reasons for ruling, the trial court awarded Dr. Valentino $11,222.50 in attorney fees and $4,330.79 in expenses, for a total of $15,553.29. The unrefuted evidence presented at trial indicated Dr. Valentino incurred $42,332.28 in attorney fees and litigation expenses. The trial court specifically found that the full amount of attorney fees and litigation expenses were reasonable and stated, "The Court

does not doubt these fees were incurred nor does it find the billing rates of the attorneys unreasonable."

However, the trial court then reduced the amount of attorney fees and litigation expenses based on "the outcome of the case" and stated, "The court must consider, however, the ultimate result obtained, the amount of money involved and notes that Dr. Valentino did not prevail on most of the claims he made in this litigation. Nonetheless, he did recover an unpaid bonus to which the Court finds he is entitled."

This court has reversed the trial court's ruling on the issue of past due wages under the terms of the PEA and awarded those wages to Dr. Valentino. Based on the law and the jurisprudence, this recovery now deems Dr. Valentino's claim as "well-founded[,]" entitling him to the requested amount of attorney fees and litigation expenses of $42,332.28, minus the amount of attorney fees and litigation expenses previously awarded by the trial court of $15,553.29. Therefore, we hereby award Dr. Valentino the remaining amount due for attorney fees and litigation expenses in the amount of $26,778.99. Dr. Valentino has also requested attorney fees for additional work done on appeal. We agree and award Dr. Valentino $7,500.00 in attorney fees for work done on appeal.

**HAVAA's Request for Revision of Judgment – Louisiana Code Civil Procedure Article 2133**

This court on appeal has granted Dr. Valentino's claim for past due wages under the terms of the PEA, thereby reversing the trial court on this issue. The trial court's judgment states, "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Vernon A. Valentino, M.D. and

20

against Heart and Vascular Associates of Acadiana, P.C. dismissing the reconventional demands of Heart and Vascular Associates of Acadiana, P.C."

The denial of Dr. Valentino's claim for past due wages was the basis of the trial court's ruling dismissing HAVAA's reconventional demand. In its original brief in opposition to Dr. Valentino's appeal, HAVAA seeks to have the trial court's judgment reversed in part and states:

> In the event this Honorable Court of Appeal were to reverse the District Court and determine that the PEA embodies the entire agreement of the parties which HAVAA denies, then HAVAA is entitled to judgment on its Reconvention Demand for the amounts paid by Abbeville General Hospital to Dr. Valentino during the term of his employment with HAVAA. Section 2(b) of the PEA provides that "all remuneration" received by Valentino "from or related to the practice of medicine shall be promptly turned over" to HAVAA. It is undisputed that Dr. Valentino received remuneration from Abbeville General from or related to the practice of medicine and failed to turn it over to HAVAA. Thus, HAVAA is entitled to the entry of judgment on its Reconventional Demand against Dr. Valentino in the amount of $139,328.40.

HAVAA's reconventional demand against Dr. Valentino asked that any fees received by Dr. Valentino from Abbeville General Hospital in the amount of $139,328.40 be paid to HAVAA pursuant to the PEA. However, HAVAA did not file an appeal of the trial court's judgment dismissing its reconventional demand, or answer the appeal of Dr. Valentino. HAVAA cites La.Code Civ.P. art. 2164, which provides in pertinent part, "The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal."

However, we find that La.Code Civ.P. art. 2133(A) controls:

> An appellee shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant. In such cases, he must file an answer to the appeal, stating the relief demanded, not later than fifteen days after the return day or the lodging of the record whichever is later. The answer filed by the appellee shall be equivalent to an appeal on his part from any portion of the judgment

21

rendered against him in favor of the appellant and of which he complains in his answer.

The Louisiana Supreme Court in *Matthews v. Consol. Cos., Inc.*, 95-1925, pp. 1-2 (La. 12/8/95), 664 So.2d 1191, 1191-92 (citations omitted), discussed the application of La.Code Civ.P. art. 2133 and stated:

> Since only plaintiff appealed, and defendants did not appeal or answer plaintiff's appeal, the total amount of damages awarded by the jury to plaintiff cannot be reduced by the appellate court because to so do would result in a modification in favor of the non-appealing defendant, contrary to Louisiana law. La.CCP art. 2133 . . . While a defendant who has not appealed or answered the appeal and who did not seek modification, revision or reversal of that judgment may assert in support of that judgment any argument supported by the record under La.CCP art. 2133, he may not obtain a modification of the judgment without appealing or answering the appeal.

In oral argument, HAVAA cited the supreme court case of *Lamartinere v. Boise Cascade Corp.*, 14-1195 (La. 10/24/14), 149 So.3d 1234, in support of its request that its reconventional demand be considered by this court on appeal. In this workers' compensation case, Mr. Lamartinere, the claimant, filed suit against Boise after his former employer discontinued all benefits based on Boise's contention that the claimant had committed fraud in violation of La.R.S. 23:1208.

The trial court in its judgment found that the claimant did not commit fraud and reinstated his temporary total disability benefits (TTDs) from the date of termination of his benefits. The trial court's judgment was "fully in favor of the claimant[.]" *Lamartinere*, 149 So.3d at 1235. The plaintiff/appellant, Boise, filed an appeal of the trial court's judgment. The claimant/appellee did not file an answer to Boise's appeal.

The court of appeals affirmed the trial court's finding of no fraud by the claimant, but reversed the trial court's reinstatement of the claimant's TTDs. The appellate court "declined to consider claimant/appellee's alternative request in his

22

brief for supplemental earnings benefits[.]" *Id.* at 1234. The appellate court held "it could not consider the request because claimant did not file an answer to Boise's appeal." *Id.* at 1235.

The Louisiana Supreme Court granted writs for the limited purpose of clarifying:

> [T]the procedural issue concerning whether the Court of Appeal can modify a judgment in favor of a non-appealing party when the appellate court reverses the trial court's judgment, **which was granted fully in favor of the non-appealing party**, and the non-appealing party did not file an answer to the appeal.

*Id.* at 1234 (emphasis ours). The supreme court found that the "Court of Appeal erred as a matter of law in requiring the claimant to file an answer to the appeal for the **modification of a judgment granted fully in favor of the non-appealing party**." *Id.* (emphasis ours).

The supreme court then discussed the applicable portion of La.Code Civ.P art. 2133 and stated, "Because the trial court's judgment was fully in favor of the claimant the claimant was under no obligation to answer the appeal." *Id.* at 1235. Pursuant "to Louisiana law, 'an appellee shall not be obligated to answer the appeal unless he desires to have the judgment modified, revised or reversed in part or unless he demands damages against the appellant.'" *Id.* (quoting La.Code Civ.P. art. 2133).

In the judgment at issue the trial court granted only a portion of the damages requested by the plaintiff Dr. Valentino. The judgment specifically dismissed HAVAA's reconventional demand for payments allegedly owed by Dr. Valentino under the terms of the PEA for work done at Abbeville General Hospital. Therefore, the judgment was not "fully in favor of" HAVAA as discussed by the supreme court in *Lamartinere*, which would have negated the requirement of

23

La.Code Civ.P. art. 2133, that HAVAA file either an answer to Dr. Valentino's appeal or file a separate appeal of the trial court's judgment. Accordingly, we find that the case cited by HAVAA does not apply to the judgment in this case.

Therefore, without a separate appeal or answer to appeal by HAVAA requesting the portion of the trial court's judgment dismissing its reconventional demand against Dr. Valentino be reversed, this court finds that it is without jurisdiction to review or grant HAVAA's requested relief.

## CONCLUSION

For the foregoing reasons, the trial court's judgment dated August 30, 2016, denying Dr. Vernon A. Valentino's claim against Heart and Vascular Associates of Acadiana, P.C. for past due wages in the amount of $132,727.22 pursuant to La.R.S. 23:631 is reversed and this court orders, adjudges and decrees that there be judgment in favor of Dr. Vernon A. Valentino and against Heart and Vascular Associates of Acadiana, P.C. for the full and true sum of $132,727.22, plus judicial interest from the date of judicial demand. This court, after a *de novo* review of the record denies Dr. Vernon A. Valentino's claim for penalty wages pursuant to La.R.S. 23:632. This court finds that the unusual circumstances of this case support the conclusion that Heart and Vascular Associates of Acadiana, P.C. was in "good faith," and penalty wages are not supported by the record on appeal. The trial court's judgment awarding attorney fees is affirmed in part, based on this court's award of past due wages, which renders Dr. Valentino's claim "well-founded[,]" pursuant to La.R.S. 23:631. The trial court's award of $15,553.39 for attorney fees and litigation expenses is **increased** to the actual amount of attorney fees and litigation expenses incurred by Dr. Valentino of $42,332.28. Since the judgment awarding the original amount of $15,553.39 is now final we hereby

24

award to Dr. Valentino an additional $26,778.99. Additionally, Dr. Vernon A. Valentino seeks an award of attorney fees for work done on appeal which this court grants in the amount of $7,500.00. The court affirms the trial court's decision dismissing Heart and Vascular Associates of Acadiana, P.C.'s reconventional demand based on lack of jurisdiction pursuant to La.Code Civ.P. art. 2133. All costs of this appeal are assessed to Heart and Vascular Associates of Acadiana, P.C.

**REVERSED IN PART, AFFIRMED IN PART, AND RENDERED.**